# COURT OF APPEALS OF VIRGINIA

**Record No. 1832-24-4**

TOWN COUNCIL OF THE TOWN OF PURCELLVILLE, VIRGINIA
v.
KMG HAULING, INC., ET AL.

Present: Judges Beales, Causey and White
Argued at Alexandria, Virginia

Opinion Issued May 12, 2026[*]

### FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Heather K. Bardot (McGavin, Boyce, Bardot, Thorsen & Katz, P.C., on briefs), for appellant.

Mathew A. Westover (Walsh, Colucci, Lubeley & Walsh, P.C., on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE DORIS HENDERSON CAUSEY

The Town Council for the Town of Purcellville (Town) appeals the circuit court's judgment

that KMG Hauling, Inc.'s (KMG) proposed use for a parcel in Loudoun County (Property) fit the

zoning ordinance's definition of an "Outdoor Storage Lot." For the foregoing reasons, we affirm in

part, reverse in part, and remand the case for further proceedings.

BACKGROUND

In August 2022, KMG submitted to the Town's zoning administrator an initial zoning

determination request, which it revised in October 2022 (Revised Determination Request). The

Revised Determination Request sought the zoning administrator's determination that KMG's

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

proposed use was permitted by right on the Property. The Revised Determination Request described the proposed use as follows:

> KMG is planning to establish a facility on the Subject Property for the storage of equipment and vehicles associated with their waste removal business. KMG primarily handles commercial waste (comprised of recyclables and trash) as well as some residential waste . . . . KMG does not handle any medical or hazardous waste . . . . The equipment and vehicles stored onsite will consist of KMG's trucks . . . . KMG will also be storing containers associated with their business onsite. All equipment and vehicles will be emptied of all waste products prior to being stored on the Subject Property. No waste will be stored onsite.
>
> The proposed facility will provide office space for employees, as well as three garage bays where employees will conduct preventative maintenance and repair solely on KMG's vehicles. The maintenance and repair work . . . will consist of preventative maintenance for the vehicles, such as replacing tires and batteries, lubrication, and oil changes. Any major vehicle repair work, such as motor or transmission work, will be done offsite.

After describing the proposed use, KMG requested that the zoning administrator confirm that: (1) KMG's use would be classified as "Outdoor Storage Lot" or "Contractor's Office and Storage Area" under the zoning ordinance; and (2) KMG's proposed use was a permissible by-right use of the Property without additional zoning entitlements.

In November 2022, the zoning administrator issued a determination (Determination) that the proposed use was *not* a principal use defined anywhere in the zoning ordinance. The zoning administrator classified the proposed use as potentially "waste management or waste hauling," and noted there was "no such principal use identified under the Town's zoning ordinance." The Property was zoned "CM-1 (Local Service Industrial)," which allows a variety of local/farm service industrial operations but restricts industries that would "produce serious adverse effects within or beyond the limits of the district." The zoning administrator opined that "daily transportation of heavy trucks would create adverse effects beyond the limits of the zoning

- 2 -

district, and therefore a truck depot is not the type of use that would be allowed in the CM-1 zoning district."

The zoning administrator also found that the proposed use did not qualify as either a Contractor's Office and Storage Area or an Outdoor Storage Lot as defined by the zoning ordinance.  The Town zoning ordinance defined Contractor's Office and Storage Area as:

> A facility in which a contractor conducts administrative activities, record-keeping, clerical work and other similar functions of business in conjunction with the storage of vehicles, equipment and supplies for offsite use *in the performance of any construction or land development trades*; does not include an Automobile, salvage or wrecking yard or Junk yard or automobile graveyard.

Town Zoning Ordinance (emphasis added).  The zoning administrator determined that KMG's proposed use did not qualify because it involved hauling waste—not construction or land development trades.  The zoning administrator next considered whether the proposed use fit within the zoning ordinance's definition for Outdoor Storage Lot, which is:

> A *lot* consisting of an enclosed area located on an all-weather surface *adjacent to an existing commercial or industrial use* where equipment, merchandise, materials, and supplies are stored for *more than 24 hours*.  Outdoor storage lots are not Automobile, salvage or wrecking yards, Junk yards or automobile graveyards, or Vehicle sales storage lot, as defined in this article.  Outdoor storage lots shall not be used for the storage of Inoperative motor vehicles and Junk.[1]

Town Zoning Ordinance (emphases added).  The zoning administrator found that an Outdoor Storage Lot must (1) be used for accessory outdoor storage use, and (2) be located adjacent to the principal commercial or industrial use.  He found that the proposed use was a type of "depot"—a place for storing motor vehicles—in conjunction with KMG's waste hauling business.  The

---

[1] According to the website for the Town of Purcellville, this definition of "Outdoor Storage Lot" is from the current zoning ordinance, which was adopted in April 2025.  Beginning with KMG's request to the zoning administrator, all parties to this case and adjudicatory bodies below have consistently used this definition.  Therefore, we consider this to be the definition at issue on appeal.

Determination concluded that the proposed use failed to satisfy the definition because waste hauling was not an identified principal use under the Town's zoning ordinance.

Under Code § 15.2-2311, KMG timely appealed to the Board of Zoning Appeals (BZA) the zoning administrator's decision that the proposed use was not an Outdoor Storage Lot, and the BZA conducted a hearing in February 2023. At the hearing, the Town's attorney explained the zoning administrator's Determination that the zoning ordinance barred the proposed use. The BZA also heard evidence on the proposed use. KMG's witness testified that 50 of KMG's 75 trucks would leave each morning for garbage hauling and return later the same day. Thus, most trucks would be on the Property for less than 24 hours. The BZA also asked KMG why it did not submit a traffic study, environmental study, or noise study, and why it had low-star reviews on Google. The BZA then sought advice from its counsel under Code § 2.2-3711(A)(7).

The BZA later issued findings and conclusions; it affirmed the zoning administrator's Determination. It held that the proposed use fell outside the definition of Outdoor Storage Lot for two reasons.[2] First, the stored trucks and equipment would "primarily be on the Property for fewer than 24 hours." Second, the "lot" was not "adjacent to an existing commercial or industrial use." The BZA found the proposed use of "daily ingress and egress" of trucks to be "more like a depot" than an Outdoor Storage Lot. And the CM-1 District did not permit waste hauling operations with a maintenance facility and office building. Such a use would have violated the CM-1 District's stated purpose and the Town's Comprehensive Plan.

---

[2] The BZA held that KMG failed to appeal the zoning administrator's conclusion that the proposed use was not a Contractor's Office and Storage Area, but even it if had, the definition would not be satisfied. The circuit court affirmed that the proposed use was not a Contractor's Office and Storage Area.

Under Code § 15.2-2314, KMG appealed the BZA's decision to the circuit court. After two hearings,[3] the circuit court issued an order in which it made legal and factual findings. The court began by finding several procedural violations by the zoning administrator and BZA. First, the circuit court found that the zoning administrator had violated Code § 15.2-2309 by failing to appear, except through the Town's counsel, at the BZA hearing. Second, the circuit court found a lack of evidence that the zoning administrator had made his zoning determination "with the concurrence of the attorney for the governing body" under Code § 15.2-2286(A)(4)(iii).

Additionally, the circuit court found that the BZA had exceeded its scope of review by developing facts and "injecting new information" that the zoning administrator had not considered, rather than limiting its review to the evidence that had been before the initial zoning administrator. For example, the circuit court found that the BZA's finding that most trucks would stay on the Property less than 24 hours was "beyond the scope of what the zoning official knew or relied upon when making his determination." Because the court found that "the BZA exceeded the scope of review by the development of facts beyond those relied upon by the zoning administrator," it concluded, "this court either cannot apply the presumption of correctness" to the BZA's factual findings that is required by Code § 15.2-2309 "or alternatively finds that such deviation from the scope of review amounts to a rebuttal of such presumption."

The circuit court next performed a de novo interpretation of the ordinance, determining that the BZA had erred in its interpretation in two ways. First, the circuit court said, the BZA erred by concluding that the lot had to be adjacent to "an existing 'lot' [that was] actively conducting business," as opposed to simply being adjacent to an existing "permissible use." "Regardless," the circuit court added, "here the original determination request included an[]

---

[3] In May 2024, the circuit court held a hearing and ruled in favor of KMG. After reconsidering its decision, it conducted a final hearing in September 2024.

office being a planned use with respect to the determination." Second, the circuit court stated that the BZA's interpretation improperly "applied an exclusivity requirement" to the ordinance that did not appear in its plain language, and improperly mandated "that every named item in the ordinance must all be stored on the property for more than 24 hours." Having rejected the BZA's findings and conducted a de novo review of the ordinance, the court concluded that the proposed use did "constitute[] 'an outdoor storage lot.'" The court reversed the BZA's decision on that ground. This appeal followed.

## ANALYSIS

Several of the Town's arguments are encapsulated in the Town's sixth assignment of error, which reads, "The circuit court erred in finding that Appellees' proposed use of the property at issue constitutes an 'Outdoor storage lot' ('OSL') under the Appellant's Zoning Ordinance."[4] In support of this argument, the Town articulates both legal and factual disagreements with the circuit court's analysis.

One of the Town's arguments is that the circuit court erred as a matter of its interpretation of the ordinance. The meaning of a zoning ordinance is a question of law that this Court reviews de novo. *Zinner v. Wash. Gas Light Co.*, 85 Va. App. 220, 255 (2025). When construing a zoning ordinance and its undefined terms, we give such terms their plain and natural meaning. *City of Charlottesville v. Payne*, 299 Va. 515, 527 (2021). We are bound by the ordinance's plain language, "unless the terms are ambiguous or applying the plain language would lead to an absurd result." *Id.* An undefined term must be "given its ordinary meaning, given the context in which it is used." *Sansom v. Bd. of Supervisors*, 257 Va. 589, 595 (1999) (quoting *Dep't of Taxation v. Orange Madison Coop. Farm Serv.*, 229 Va. 655, 658 (1980)). The "purpose and

---

[4] The Town's seventh assignment of error is similar and, per the Town's brief, is addressed in tandem with this assignment of error.

intent of the ordinance should be considered but the ordinance should not be extended by interpretation or construction beyond its intended purpose." *Higgs v. Kirkbride*, 258 Va. 567, 573 (1999).

The Town also assigns error to the circuit court's rejection of the BZA's factual findings.[5] As long as a circuit court applies the statutory presumption of correctness to the BZA's findings, this Court will uphold the circuit court's own findings unless they are plainly wrong or without evidence to support them. *Bd. of Supervisors for the Cnty. of Louisa v. Vallerie Holdings of Va., LLC*, 80 Va. App. 335, 349 (2024). Here, however, the circuit court found the presumption of correctness inapplicable to the BZA's factual findings based on its interpretation of statutes governing the scope and procedure of BZA hearings. In reviewing these statutory interpretation holdings, we perform a de novo review. *Berry v. Bd. of Supervisors*, 302 Va. 114, 127 (2023).

A. The Circuit Court Correctly Interpreted the Zoning Ordinance

The circuit court rendered two legal rulings regarding the meaning of the zoning ordinance at issue in this case. We review them in turn.

i. Adjacent to an Existing Commercial or Industrial Use

First, we review the circuit court's interpretation of the ordinance's requirement that the "lot" be "adjacent to an *existing* commercial or industrial use." (Emphasis added). As part of its statutory interpretation, the circuit court appeared to hold that the "outdoor storage lot" definition could be satisfied by KMG's construction of an office adjacent to the lot.[6] The Town argues that

---

[5] This argument is made in the Town's fourth and fifth assignments of error.

[6] The circuit court's final order appears to indicate that this statutory construction was an alternate basis for its ruling, with its primary interpretation involving a distinction between a required "permissible use" and a required ongoing "business concern." However, we address only the aspect of the circuit court's statutory interpretation that is described in the body of the opinion, above, because it is the only aspect that the Town addresses on brief. Rule 5A:20(c),

this interpretation erroneously "construes the word 'existing' to mean the same thing as 'proposed.'" In other words, the Town's view is that under the definition, an adjacent "commercial or industrial use" must already be physically present before a landowner may submit a successful request for a zoning determination for an "outdoor storage lot."

We are not persuaded by the Town's argument. The requirements of the "outdoor storage lot" definition do not set preconditions to a landowner submitting a request for a zoning determination. Instead, they set substantive requirements for a use to qualify as a by-right use. Thus, while the term "existing" clearly requires that a lot ultimately be adjacent to an actually-existent commercial or industrial use, it does not set a procedural requirement that a party obtain approval for, or engage in, the adjacent use before requesting a determination about the storage lot generally, as such a requirement does not appear in the plain language. *Payne*, 299 Va. at 527.

The terms surrounding the adjacency requirement strongly indicate that it should be read substantively, not procedurally. "The maxim of *noscitur a sociis* provides that the meaning of doubtful words in a statute may be determined by reference to their association with related words and phrases." *TravCo Ins. Co. v. Ward*, 284 Va. 547, 554 n.2 (2012) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 432 (2012)). Here, none of the words in the outdoor storage lot definition relate to the process of requesting a zoning determination, nor to any other procedural stage of zoning. Further, the role played by the definition in the statute as a whole confirms the substantive meaning of the adjacency requirement. In interpreting ordinances, courts "consider the [ordinance's] text *and its structure* to determine the legislative

---

(e). Further, the Town focuses its discussion on brief on the fact that the adjacent use had not been separately approved yet. The Town does not challenge the circuit court's conclusions that the planned office was a permissible "commercial or industrial use," nor that it was sufficiently "adjacent" to the relevant lot. Therefore, we do not address those issues. Rule 5A:20(c), (e).

objective." *Burns v. Commonwealth*, 279 Va. 243, 250 (2010) (emphasis added) (quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003)). The outdoor storage lot definition is explicitly designed to apply to all of the provisions of the ordinance, including provisions that merely establish what constitutes a by-right use in different areas. As such, interpreting the definition to have procedural meaning would create the odd result of requiring a party reviewing present compliance with the zoning code—for instance, a zoning administrator engaged in zoning enforcement pursuant to Code § 15.2-2286(4)—to harken back to the order of operations taken during the original zoning determination process.

The Town points to various points throughout the zoning ordinance in which the term "existing" is apparently contraposed against the term "proposed." These examples, however, appear in explicitly *procedural* parts of the ordinance, including (1) provisions governing the application process for special use permits, special exceptions, and variances, and (2) provisions governing the submission and review of site plans. In these particular contexts, the term "existing" clearly refers to the conditions at the time of an application or submission, while "proposed" refers to the substance of the material being proposed. The meaning of "existing" in those procedural parts of the statute is not significantly informative as to its meaning in the substantive definitions section.

In sum, we find that the circuit court correctly interpreted the adjacency requirement in the Outdoor Storage Lot definition. The definition has a substantive focus, and nothing in the definition precludes a party from requesting a zoning determination regarding the ability of a *potential* use to qualify as an outdoor storage lot before the adjacent use has been itself approved or constructed.

ii. The 24-Hour Storage Provision

Second, we review the circuit court's interpretation of the ordinance's requirement that the "lot" be an "area . . . where equipment, merchandise, materials, and supplies are stored for more than 24 hours." The circuit court opined that this language did not require that all items stored on the property must be there for more than 24 hours. We agree with the circuit court.

We note that the statute does not use the term "all." *See Vaughn, Inc. v. Beck*, 262 Va. 673, 679 (2001) (noting that appellate courts do not ordinarily add words to statutes). In fact, the ordinance does not define any specific percentage of items that must be present.

To be sure, as the statute identifies the permitted use with storage exceeding 24 hours, we cannot say that the percentage of items stored for more than 24 hours is wholly irrelevant to whether a particular use qualifies as an outdoor storage lot. *Cf. Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 146 (2017) (ruling that an ambiguous statutory phrase contained a quantitative component but declining to establish the specific quantity required). Whether the details of a particular use allow it to qualify as an "outdoor storage lot" under the requirement is ultimately a factual issue that depends on the details of the particular use.

While the circuit court also held that the BZA erred by inferring such a numerical requirement, we do not find that the BZA's written findings and conclusions of law clearly indicate that such an interpretation was reached, as opposed to the BZA considering the percentage of vehicles apparently being stored for over 24 hours as relevant to its conclusion. We therefore do not agree with the circuit court that its findings show that the BZA necessarily misinterpreted the term in this manner. However, as stated, the definition does not require a specific percentage of items to be held for more than 24 hours.

B.  The Circuit Court Erred in Finding that the Statutory Presumption of Correctness Was Rebutted or Could Not Be Applied

As noted, the circuit court also ruled that it either could not apply the statutory presumption of correctness for the BZA's factual findings, or that this presumption had been rebutted. This ruling was reached on the basis of a ruling that the BZA had exceeded the scope of its authority, and was possibly related to a ruling that the BZA hearing had suffered from certain procedural irregularities.[7] For the following reasons, we hold that the circuit court erred in rejecting the BZA's factual findings.

i.  Procedural Irregularities

The court held that two procedural errors had occurred below: first, the court found that no evidence showed that the zoning administrator's initial determination was reached "with the concurrence of the attorney for the governing body" as required by Code § 15.2-2286(A)(4)(iii); and second, the court found that no evidence showed that at the BZA hearing, the zoning administrator had "explain[ed] the basis for his determination" as required by Code § 15.2-2309. The Town notes that KMG never raised either of these issues prior to the circuit court ruling on them. The Town also disputes the circuit court's interpretation of both provisions.[8] We find that we need not address these arguments. Assuming without deciding that those above-described procedural errors did occur, they would have no effect on the presumption of correctness of the BZA's factual findings.

---

[7] These rulings are challenged both substantively and procedurally in the Town's first, second, fourth, and eighth assignments of error.

[8] The Town argues that the circuit court misinterpreted Code § 15.2-2286(A)(4)(iii) to require the attorney to concur with the decision generally as opposed to only legal conclusions. The Town also argues that the circuit court erred by inferring a requirement (not stated in the statute) for the record to affirmatively show such a concurrence when reviewed by the circuit court, two appeal levels later, under Code § 15.2-2314. Finally, the Town argues that it was sufficient under Code § 15.2-2309 for the town attorney to present argument in favor of the zoning administrator's decision because the town attorney represents all town officials.

Code § 15.2-2314 directs that before the circuit court, "the findings and conclusions of the board of zoning appeals on questions of fact shall be presumed to be correct" and questions of law are to be reviewed de novo. To "rebut that presumption," the appealing party bears the burden of proving "that the [BZA] erred in its decision" by a "preponderance of the *evidence*, including the record before the [BZA]." *Id.* (emphasis added). This statutory language provides no indication that the presumption of correctness may be rebutted by the showing of procedural irregularities, whether present in the BZA hearing or at the point when the zoning administrator rendered the original ruling. Instead, by directing that such a presumption may be rebutted by a "preponderance of the evidence," the statute clearly contemplates the taking of evidence bearing on the accuracy of the findings. *Cf. Leach-Lewis v. Bd. of Supervisors*, No. 0185-22-4, slip op. at 11-13, 2023 Va. App. LEXIS 392, at *15-16 (June 13, 2023) ("[Code § 15.2-2314] . . . allows parties to introduce new evidence for a limited purpose—supporting or rebutting factual findings the BZA has already made, and that the circuit court must presume are correct."), *rev'd on other grounds*, 303 Va. 225 (2024).

Procedural irregularities in the BZA hearing can certainly be relevant to a reviewing circuit court. However, in this case, no argument was presented to this Court—nor to the circuit court—regarding the potential implications of the procedural irregularities at issue here. In fact, KMG never noted these procedural issues with the circuit court at all. Therefore, we hold that these procedural violations could not provide any grounds to support the court's decision that the presumption of correctness was inapplicable. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

ii. The BZA's Scope of Review

The circuit court clearly held that it could not apply the statutory presumption of correctness because the BZA "exceeded the scope of review associated with its powers as an appellate body" by "the development of facts beyond those relied on by the zoning administrator." The question of whether the BZA exceeded the scope of its authority requires us to interpret the statutory scheme governing appeals to the BZA.

For context, the appeal to the BZA in this case followed the zoning administrator's decision under Code § 15.2-2286(A)(4), which authorizes the administrator to render factual findings and legal conclusions "regarding determinations of rights accruing under § 15.2-2307 or subsection C of § 15.2-2311." Specifically, the zoning administrator issued "a written . . . determination regarding the permissibility of a specific use . . . of [a] landowner's property." Code § 15.2-2307(B)(vii). Following the zoning administrator's determination, the landowner had a right to appeal to the Board of Zoning Appeals. Code § 15.2-2311(A). Appeals to the BZA are governed by Code § 15.2-2309, which is the provision we now must interpret.

Code § 15.2-2309 states that "the decision" of the BZA "shall be based on the board's judgment of whether the administrative officer was correct." *Id.* In reaching this decision, "[t]he determination of the administrative officer shall be presumed to be correct." Finally, "At a hearing on an appeal, the administrative officer shall explain the basis for his determination after which the appellant has the burden of proof to rebut such presumption of correctness by a preponderance of the evidence." *Id.*

The circuit court in this case focused on Code § 15.2-2309's language confining the BZA's review to the question of whether "the administrative officer was correct." *Id.* The court observed that this language demonstrates that the BZA is acting "as a reviewing body." And it cited precedent showing that the BZA acts in a "quasi-judicial" capacity. *Frace v. Johnson*, 289

- 13 -

Va. 198, 201 (2015). Considering these principles, the court concluded that permitting the BZA to consider information not originally presented to the zoning administrator below would permit it to impermissibly exceed its authority. Therefore, the court held that where the BZA's factual findings relied on "issues such as traffic studies, environmental studies, noise issues, odor issues, as well as floodplain issues" that were not presented to the zoning administrator, these findings depended on the BZA exceeding its authority—and thus, the presumption of correctness could not be applied to them.

After careful review, we disagree with the circuit court that Code § 15.2-2309 prohibited the BZA from considering evidence and information not presented to the zoning administrator, insofar as that information was relevant to the question originally before the zoning administrator. We do not read the language used in Code § 15.2-2309 to create such an evidentiary prohibition.

As noted, Code § 15.2-2309 states that the zoning administrator's decision "shall be presumed to be correct" and that "the appellant has the burden of proof to rebut such presumption of correctness by a preponderance of the evidence."[9] This statutory framework explicitly contemplates that in reviewing the zoning administrator's decision, the BZA will take and weigh evidence. As this Court has said in interpreting similar language in Code § 15.2-2314, the General Assembly has created "a unique circumstance" in which a reviewing body "hear[s] an appeal" but "is also authorized to take new evidence"—

---

[9] This language has been in place since 2015. Prior to 2015, this statute directed that the BZA hearing determine "whether the administrative officer was correct" but did not set forth burdens of proof. *See* 2015 Va. Acts ch. 597. A similar change was made to Code § 15.2-2314, the statute governing BZA appeals to circuit courts, as identical language regarding the presumption of correctness and appellant's burden of proof was added to Code § 15.2-2314 in 2003 (before it was further updated in 2006). *Zinner*, 85 Va. App. at 251 n.14, 252 n.16; 2003 Va. Acts ch. 568; 2006 Va. Acts ch. 446. As discussed *infra*, while some appellate case law has addressed the 2003 and 2006 updates to Code § 15.2-2314, no appellate case law has interpreted the analogous 2015 changes to Code § 15.2-2309.

despite taking evidence being "a practice typically prohibited at an appellate hearing." *Graydon Manor, LLC v. Bd. of Supervisors of Loudoun Cnty.*, 79 Va. App. 156, 163 (2023); *see also Vallerie Holdings*, 80 Va. App. at 347 (describing this as an "unusual 'hybrid' posture"). This unique set of procedures "transforms the . . . proceeding from purely appellate in nature to a hybrid trial *and* appellate hearing." *Graydon Manor*, 79 Va. App. at 163. Thus, while the circuit court was right that the BZA acts as a reviewing body, reliance on typical limitations on appellate procedure will not suffice to determine the rules governing hearings under Code § 15.2-2309.

The circuit court indicated that it read Code § 15.2-2309 to state that the only evidence that may be introduced and weighed at the BZA hearing was the same evidence that was before the zoning administrator. The circuit court's reasoning relied on the requirement that the decision be based on "whether the administrative officer was correct." Code § 15.2-2309. Clearly, it is correct that this language imposes substantial limitations on the scope of the BZA hearing. In the context of Code § 15.2-2314, this principle has been interpreted to prohibit first-time appellate challenges to statutes underlying the appealed body's decision. *See Bd. of Zoning Appeals v. Univ. Square Assocs.*, 246 Va. 290, 295 (1993) (because the circuit court's decision "was limited to the issue whether the zoning administrator's ruling was correct, the constitutionality of the underlying legislation was not a proper subject for the trial court's review on a writ of certiorari"). However, no court interpreting either Code § 15.2-2309 or Code § 15.2-2314 appears to have ruled on the impact of this limiting standard on the presentation of new, relevant evidence to rebut or defend the presumption of correctness. *See Zinner*, 85 Va. App. at 246 n.12 (declining to reach appellant's argument that the circuit court "defied its quasi-appellate role by hearing [too] much new evidence" under Code § 15.2-2314 because this issue was not listed in appellant's assignments of error).

Focusing on the plain language of the statute, we are not persuaded that Code § 15.2-2309's rule confining review to "whether the administrative officer is correct" places an evidentiary limitation on the scope of the BZA's hearing. The "correctness" of a zoning administrator's "decision" regarding a party's right to engage in a particular use can be justified or rebutted pursuant to additional, newly presented evidence concerning that use. Especially given that new evidence can be introduced at the hearing and that the BZA hearing is not a purely appellate procedure, *Graydon Manor*, 79 Va. App. at 163, we do not read this requirement to impose a limitation on the evidentiary presentation—as opposed to the legal issues—before the BZA.

Applying the plain language of the statute, we conclude that restricting the scope of the BZA's review in the manner urged by appellee would require impermissibly adding words to the statute. *See Jackson v. Fid. & Deposit Co.*, 269 Va. 303, 313 (2005). The requirement to review "whether the administrative officer was correct" is compatible with and does not prohibit the BZA from taking new evidence to determine whether the presumption of correctness has been rebutted "by a preponderance of the evidence." Code § 15.2-2314.[10]

---

[10] In its third assignment of error, the Town alleges that the circuit court confined its review to the "four corners" of the amended zoning determination request and the zoning administrator's ruling. We do not find it necessary to address this assignment of error, which would require us to speculate as to the exact materials considered by the court in reaching its ruling, as it amounts to another characterization of the court's ruling already discussed regarding the BZA's scope of review.

CONCLUSION

The circuit court did not err in interpreting the ordinance. The circuit court did, however, err in rejecting the factual findings and the presumption of correctness applicable to those findings on the basis that the BZA exceeded the scope of its authority. Thus, we remand the case to the circuit court for further proceedings consistent with Code § 15.2-2314 and this opinion.[11]

*Affirmed in part, reversed in part, and remanded.*

---

[11] This Court is not best positioned to evaluate the record before the BZA, and to assess whether the evidence presented to the circuit court in fact rebutted the presumption of correctness of the BZA's findings by the preponderance of the evidence. Code § 15.2-2314. Thus, we render no ruling as to the materiality of the evidence presented by the Town at the BZA hearing. Our ruling only concerns the BZA's *authority* to consider such evidence under Code § 15.2-2309.

Finally, in its last assignment of error, the Town argues that the circuit court was required to memorialize its ruling affirming the BZA's decision that the proposed use did not constitute a "contractor's office and storage area." In this Court's view, the final order already sufficiently notes this ruling.